UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| 84 VIDEO/NEWSSTAND, INC., d/b/a 84 VIDEO/NEWSSTAND, *et al.*, | ) ) ) | Case No.: 1:07 CV 3190 |
| Plaintiffs | ) ) | |
| v. | ) ) | JUDGE SOLOMON OLIVER, JR. |
| THOMAS SARTINI, in his official capacity as Ashtabula County Prosecutor, *et al.*, | ) ) ) ) | |
| Defendants | ) | <u>ORDER</u> |

On October 17, 2007, Plaintiff 84 Video/Newsstand, Inc., *et al.*, ("Plaintiffs") moved for a Temporary Restraining Order ("TRO") and preliminary injunction to enjoin Defendant Thomas Sartini, in his official capacity as Ashtabula County Prosecutor, and others ("Defendants") from enforcing O.R.C. § 2907.40, which restricts "sexually oriented businesses" with regard to hours of operation and imposes a no-touch rule, against Plaintiffs, their officers, agents and employees. (Pl.'s Mot., ECF No. 3.)

On October 17, 2007, at 3:30 p.m., the court held a telephonic conference at which the court heard from both sides, as well as representatives from the Ohio Attorney General's office, regarding Plaintiff's Motion for a TRO. For the reasons set forth below, Plaintiff's Motion for a TRO is denied.

## I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs consist of three groups: (1) businesses throughout Ohio that sell adult books, magazines, videos, and DVDs ("bookstore Plaintiffs"); (2) businesses throughout Ohio that present nude or seminude adult performances to patrons ("cabaret Plaintiffs"); and Buckeye Association of Club Executives ("BACE"), a not-for-profit trade group that promotes and protects the rights of member adult bookstores and cabarets throughout Ohio. Defendants consists of two groups: (1) law directors for cities and villages throughout Ohio in which Plaintiffs and BACE members are located; and (2) county prosecutors for the counties throughout Ohio in which Plaintiffs and BACE members are located. Defendants have the authority to prosecute violations of O.R.C. § 2907.40. Plaintiffs also served the Ohio Attorney General, pursuant to Federal Rule of Civil Procedure 5.1, because the case involves a question of Ohio constitutional law.

On May 16, 2007, the Ohio General Assembly adopted Substitute Senate Bill 16 ("S.B. 16"), which was scheduled to take effect on September 4, 2007. The effective date of the statute was delayed as the result of a referendum petition seeking to place the law on the November, 2007 statewide ballot. Because the Secretary of State found that the circulators of the referendum failed to gain the required number of signatures, the law went into effect at midnight on October 17, 2007.

O.R.C. § 2907.40 provides:

> (B) No sexually oriented business shall be or remain open for business between 12:00 midnight and 6:00 a.m. on any day, except that a sexually oriented business that holds a liquor permit pursuant to Chapter 4303[] of the Revised Code may remain open until the hour specified in that permit if it does not conduct, offer, or allow sexually oriented entertainment activity in which the performers appear nude.
> (C)(1) No patron who is not a member of the employee's immediate family shall knowingly touch any employee while that employee is nude or seminude or touch the clothing of any employee while that

>>employee is nude or seminude.
>>>(2) No employee who regularly appears nude or seminude on the premises of a sexually oriented business, while on the premises of that sexually oriented business and while nude or seminude, shall knowingly touch a patron who is not a member of the employee's immediate family or another employee who is not a member of the employee's immediate family or the clothing of a patron who is not a member of the employee's immediate family or another employee who is not a member of the employee's immediate family or allow a patron who is not a member of the employee's immediate family or another employee who is not a member of the employee's immediate family to touch the employee or the clothing of the employee.
>>(D) Whoever violates division (B) of this section is guilty of illegally operating a sexually oriented business, a misdemeanor of the first degree.
>>(E) Who violates division (C) of this section is guilty of illegal sexually oriented activity in a sexually oriented business. If the offender touches a specified anatomical area of the patron or employee, or the clothing covering a specified anatomical area, a violation of division (C) of this section is a misdemeanor of the first degree. If the offender does not touch a specified anatomical area of the patron or employee, or the clothing covering a specified anatomical area, a violation of division (C) of this section is a misdemeanor of the fourth degree.

The disputed statute thus contains two provisions: (1) an hours of operation restriction; and (2) a no-touch law.

The statute further defines "sexually oriented business" as "an adult bookstore, adult video store, adult cabaret, adult motion picture theater, sexual device shop, or sexual encounter center, but does not include a business solely by reason of its showing, selling, or renting materials that may depict sex."

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 65 governs the issuance of temporary restraining orders and preliminary injunctions. In deciding whether to issue a TRO, a court must consider four criteria: the likelihood of success on the merits, whether the injunction will save plaintiff from irreparable injury, whether the injunction will harm others, and whether the public interest will be served by the injunction. *See e.g., Southern Milk Sales, Inc. v. Martin*, 924 F.2d 98, 103 n.3 (6th Cir. 1991).

## III. LAW AND ANALYSIS

### A. Level of Scrutiny for Hours of Operation Restriction

Plaintiffs contend that O.R.C. § 2907.40 is a content-based restriction and therefore subject to strict scrutiny. It is well-settled that a content-based law, "that is, [a law] intended to impact speech," is subject to strict scrutiny, while a content-neutral law, "unrelated to the content of speech," is subject to the four-step test laid out in *United States v. O'Brien*, 391 U.S. 367, 377 (1968). *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County*, 274 F.3d 377, 391 (6th Cir. 2001) (quotations omitted). In the *City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (2000), the Supreme Court held that while nude dancing is expressive conduct, "it falls only within the outer ambit of the First Amendment's protection." The Court laid out the framework for determining whether a regulation was content-based or content-neutral, stating that:

> [t]o determine what level of scrutiny applies to the ordinance at issue here, we must decide "whether the State's regulation is related to the suppression of expression." If the governmental purpose in enacting the regulation is unrelated to the suppression of expression, then the regulation need only satisfy the "less stringent" standard from *O'Brien* for evaluating restrictions on symbolic speech. If the government interest is related to the content of the expression, however, then the regulation falls outside the scope of the *O'Brien* test and must be justified under a more demanding standard.

*Id.* (quotations and citations omitted).

In *Deja Vu of Cincinnati, L.L.C., v. Union Twp. Bd. of Trs.*, 411 F.3d 777, (6th Cir. 2005), which involved a local law that required adult cabarets to close at midnight, the Sixth Circuit applied intermediate scrutiny. In so doing, the court relied on the Supreme Court's holding that restrictions on public nudity are subject to the less stringent *O'Brien* test for content-neutral laws. *Id.*; see *City of Erie*, 529 U.S. 277 (2000). Plaintiffs attempt to distinguish *Deja Vu of Cincinnati* on the ground that the local law in that case expressly stated that it was designed to reduce secondary effects of adult businesses, while the law in the instant case does not contain a preamble or statement of legislative purpose, nor does the language of the statute itself "make reference to alleged adverse secondary effects associated with adult entertainment businesses." (Pls.' Mem. in Support of Pls.' Mot. 9, ECF No. 4-2.) However, in *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 582 (1991), Justice Souter stated, in his concurrence, that:

> Our appropriate focus is not an empirical enquiry into the actual intent of the enacting legislature, but rather the existence or not of a current governmental interest in the service of which the challenged application of the statute may be constitutional. . . . [L]egislation seeking to combat the secondary effects of adult entertainment need not await localized proof of those effects . . . . I do not believe that a State is required affirmatively to undertake to litigate this issue repeatedly in every case. The statute as applied to nudity of the sort at issue here therefore satisfies the second prong of O'Brien.

(quoted in *DLS, Inc., d/b/a Diamonds and Lace Showbar v. City of Chattanooga*, 107 F.3d 403, 411 (6th Cir. 1997). In 2006, the Sixth Circuit rejected as moot plaintiffs' argument that they had not been able to challenge the secondary effects of the law, stating:

> Deja Vu is not entitled to discovery regarding secondary effects. We have followed the Supreme Court in deferring to local governments' conclusions regarding whether and how their ordinances address adverse secondary effects of adult-oriented establishments. It is clear, for instance, that a local government does not need localized proof of adverse secondary effects in order to regulate adult establishments. *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 51-52, 106 S. Ct. 925, 89 L. Ed. 2d 29 (1986) ; *DLS, Inc. v. City of Chattanooga*, 107 F.3d 403, 411 (6th Cir. 1997) (quoting *Barnes*

> *v. Glen Theatre, Inc.*, 501 U.S. 560, 582-84, 111 S. Ct. 2456, 115 L. Ed. 2d 504 (1991) (Souter, J., concurring in the judgment)). Similarly, all that is needed to justify a regulation is a reasonable belief that it will help ameliorate such secondary effects. *Deja Vu of Cincinnati, L.L.C. v. Union Township Bd. of Trustees*, 411 F.3d 777, 790 (6th Cir. 2005) (*en banc*) (quoting *Richland Bookmart, Inc. v. Nichols*, 137 F.3d 435, 440 (6th Cir. 1998)). Deja Vu offers no authority entitling it to undermine this deference through discovery.

*Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County*, 466 F.3d 391, 398 (6th Cir. 2006). Therefore, the fact that the disputed statute does not expressly state the secondary effects that it was intended to address does not made the law a content-based restriction. Defendant K. Phillip Callahan, in his official capacity as Monroe Law Director, through counsel ("Defendant Callahan"), argues that "the General Assembly has considered extensive evidence documenting the negative secondary effects of sexually oriented business, both prior to and during the consideration of SB 16." (Def.'s Br. Resp. Pl.'s Mot. for TRO 5 ("Def's Opp'n"), ECF No. 10.) Defendant Callahan also quoted the first line of the statute, which states that the act is intended "[t]o amend [O.R.C. §] 503.52 . . ." (*Id.* at 6.) Defendant Callahan also provides evidence that the Ohio legislature thoroughly laid out a statement of intent and findings regarding O.R.C. § 503.52, which is titled "Authority to regulate adult entertainment establishments," which state, in part, that:

> (2) The General Assembly finds that adult entertainment establishments are frequently used for unlawful sexual activities, including prostitution and sexual liaisons of a casual nature.
> (3) The concern over sexually transmitted diseases is a legitimate health concern of this state that demands reasonable regulation of adult entertainment establishments by the state in the specified manner, and expanded authority for reasonable regulation of adult entertainment establishments by local governments, in order to protect the health and well-being of the citizens.
> . . . .
> (5) There is convincing documented evidence that adult entertainment establishments, because of their very nature, have a deleterious effect on both the existing businesses around them and the surrounding residential areas adjacent to them and cause increased crime, particularly in the overnight hours, and the downgrading of property values.

-6-

. . . .

(Def.'s Opp'n at 6-7) (quoting O.R.C. § 2907.38) (with uncodified law) (attached as Def.'s Ex. B.) Defendant Callahan argues that the statute at issue was amending the statute in which these findings of secondary effects were made, and also that similar evidence was considered during the discussion and enactment of the disputed statute. The court recognizes the arguments made by Plaintiffs in their Reply Brief (ECF No. 14) that the findings made with regard to a prior bill should not be used as legislative findings for the statute at issue. However, the court finds Defendant Callahan's argument that the prior findings may be relied upon to be credible at this stage. Therefore, as controlling case law indicates that the government's burden to show secondary effects is not heavy, and as the government has shown secondary effects in the instant case, the court finds that the disputed statute is subject to intermediate scrutiny as a content-neutral regulation.

**B. Overbreadth**

Plaintiffs argue that O.R.C. § 2907.40 is overbroad in three ways: (1) its definition of adult cabaret; (2) the no-touch regulation; and (3) the definition of "adult bookstore." (Def.'s Opp'n at 12.)

### 1. Definition of Adult Cabaret

Plaintiff first argues that the statute's definition of adult cabaret would include a variety of establishments that do not engage in the kind of activities that are ordinarily associated with adult cabarets. The statute defines "adult cabaret" as "a nightclub, bar, juice bar, restaurant, bottle club, or other similar commercial establishment, regardless of whether alcoholic beverages are served, that regularly features individuals who appear in a state of nudity or seminudity." O.R.C. § 2907.40(A)(2). However, the cases on which Plaintiffs rely for statutes that have been deemed overbroad distinguish statutes which are susceptible to a limiting construction. For example, *Odle v. Decatur County*, 421 F.3d 386, 392 (6th Cir. 2005), held a law to be overbroad that prohibited

-7-

"nudity and the performance of a wide range of sexually suggestive acts in 'public places where intoxicating liquors [] are offered for sale, served or consumed." (quotation omitted and brackets in original). *Odle* distinguished "cases where an ordinance or statute survived review . . . because an express exception in the law's text or other specific language made the law 'readily susceptible' to a limiting construction." *Id.* at 396 (citing cases) (brackets in original). Here, the definition of adult cabaret is limited to only bar-like establishments, and therefore Plaintiffs' argument that the statute would apply to theater productions of *Hair* is not well-taken.

### 2. No-Touch Regulation

Similarly, Plaintiffs argue that the no-touch provision for adult cabarets will prohibit non-sexual contact among dancers. However, as the court has found that the statute does not apply to non-adult-themed theaters and dance venues, the court rejects this argument.

The court also finds that Plaintiffs' reliance on *Shultz v. City of Cumberland*, (7th Cir. 2000), is not persuasive. In *Schultz*, the court struck down a law that outlawed "particular movements and gestures of the erotic dancer," which infringes on protected expression. *Id.* at 847. However, prohibiting all physical touching between nude/seminude performers and between nude/seminude and clothed patrons, as in the instant disputed law, does not involve protected expression. A recent Kentucky appellate court summarized case law finding no-touch provisions similar to that at issue in the instant case to be constitutional. In *Cam I, Inc. v. Louisville/Jefferson County Metro Gov't*, No. 2005-CA-85-MR, 2007 Ky. App. LEXIS 370, 128-129 (Ky. Ct. App. Oct. 5, 2007), the court stated:

> Numerous courts have held that a no-touch provision is not constitutionally infirm because there is no constitutionally expressive conduct involved. *See e.g.*, *Hang On, Inc. v. City of Arlington*, 65 F.3d 1248, 1253-55 (5th Cir. 1995) (holding "no touch" provision not overbroad and does not burden more protected expression than necessary); *American Show Bar Series, Inc. v. Sullivan County*, 30 S.W.3d 324, 338 (Tenn. Ct. App. 2000); *2300, Inc. v. City of*

-8-

> *Arlington*, 888 S.W.2d 123, 129 (Tex. Ct. App. 1994) (upholding "no touching" provision). We agree with these courts that touching between a performer and a customer is not protected expression. Simply because United States Supreme Court case law has thrust upon us a mandate that erotic expression deserves at least minimal First Amendment protection, this does not mean that all activities taking place in such an environment are likewise protected. Because (1) performers have no constitutional right to touch patrons, (2) patrons have no constitutional right to touch performers, and (3) government can pass legislation designed to reduce the negative secondary effects of sexually oriented businesses, we disagree with the [state] circuit court that the no-touch provision is overbroad.

### 3. Definition of Adult Bookstore

Plaintiffs similarly challenge the statute's definition of "adult bookstore," which reads:

> "[a]dult bookstore" or "adult video store" means a commercial establishment that has as a significant or substantial portion of its stock in trade or inventory in, derives a significant or substantial portion of its revenues from, devotes a significant or substantial portion of its interior business or advertising to, or maintains a substantial section of its sales or display space for the sale or rental, for any form of consideration, of books, magazines, periodicals, or other printed matter, or photographs, films, motion pictures, video cassettes, compact discs, slides, or other visual representations, that are characterized by their emphasis upon the exhibition or description of specified sexual activities or specified anatomical areas.

O.R.C. § 2907.40(A)(1). Plaintiffs argue that the terms "significant" and "substantial" are so elastic and all-encompassing that they would render the statute applicable to mainstream bookstores that sold adult-themed books. The court disagrees. Defendant Callahan cites several circuit cases that have upheld this language in various statutes. (Def.'s Opp'n at 16.) For example, the Tenth Circuit has held:

> We note that language similar to the "significant or substantial" language used in this ordinance has been interpreted previously by state courts in a sufficiently narrow manner to avoid constitutional problems. A common method of narrowing construction has been to develop a percentage that will act as a guide as to what constitutes "significant or substantial." *See, e.g.*, *Dandy Co. v. Civil City of South Bend*, 401 N.E.2d 1380, 1385-86 (Ind. Ct. App. 1980) (holding

-9-

> that a conviction under a similar ordinance was sustainable where there was evidence that "50 to 80% of the inventory was adult in nature"); *St. Louis County v. B.A.P., Inc.*, 25 S.W.3d 629, 630-31 (Mo. Ct. App. 2000) (noting that a local adult-business ordinance established a rebuttable presumption that a business carries "a substantial portion" of adult-oriented items where more than twenty-five percent of the retail value of the inventory consists of such items); *City of New York v. Les Hommes*, 94 N.Y.2d 267, 724 N.E.2d 368, 370, 702 N.Y.S.2d 576 (N.Y. 1999) (noting that the City of New York had clarified that a "substantial portion" for purposes of its adult-business ordinance meant at least forty percent). We conclude that "the limited amount of uncertainty in the ordinance[] is easily susceptible of a narrowing construction." *Young*, 427 U.S. at 61.

*Z.J. Gifts D-4, L.L.C. v. City of Littleton*, 311 F.3d 1220, 1230 (10th Cir. 2002).  As such, the court finds that Plaintiffs' challenge to the "significant or substantial portion" language is not well-taken. Therefore, the court finds that Plaintiffs have not shown, at this stage, that the disputed statute is overbroad.

### C. *Alameda Books* Burden-Shifting Inquiry

In light of the court's prior determination that the intermediate scrutiny test applies to the regulation at issue because it is content-neutral, the court must undertake the four-step analysis set forth in *O'Brien*.  That analysis requires that the government enact the statute: "(1) within its constitutional power, (2) to further a substantial governmental interest that is (3) unrelated to the suppression of speech, and whether (4) the provisions pose only an "incidental burden on First Amendment freedoms that is no greater than is essential to further the government interest." *Deja Vu of Nashville*, 274 F.3d at 393 (quotation omitted).  In determining whether a substantial government interest exists, courts use the burden-shifting test set forth in *City of L.A. v. Alameda Books*, 535 U.S. 425 (2002).  Under this test,

> a municipality may rely on any evidence that is "reasonably believed to be relevant" for demonstrating a connection between speech and a substantial, independent government interest. [*Renton v. Playtime Theatres, Inc.*,] 475 U.S. at 51-52; *see also, e.g.*, *Barnes v. Glen*

-10-

> *Theatre, Inc.*, 501 U.S. 560, 584, 115 L. Ed. 2d 504, 111 S. Ct. 2456 (1991) (SOUTER, J., concurring in judgment) (permitting municipality to use evidence that adult theaters are correlated with harmful secondary effects to support its claim that nude dancing is likely to produce the same effects). This is not to say that a municipality can get away with shoddy data or reasoning. The municipality's evidence must fairly support the municipality's rationale for its ordinance. If plaintiffs fail to cast direct doubt on this rationale, either by demonstrating that the municipality's evidence does not support its rationale or by furnishing evidence that disputes the municipality's factual findings, the municipality meets the standard set forth in *Renton*. If plaintiffs succeed in casting doubt on a municipality's rationale in either manner, the burden shifts back to the municipality to supplement the record with evidence renewing support for a theory that justifies its ordinance.

*Id.* at 438-39. Although the government's evidence cannot be "shoddy," *Deja Vu of Nashville,* as quoted previously, indicates that the government need not provide "localized proof of adverse secondary effects," and that "all that is needed to justify a regulation is a reasonable belief that it will help to ameliorate such secondary effects." 466 F.3d at 398. In the instant case, Defendants have provided numerous examples of cases that have upheld similar regulations, and have pointed to legislative findings regarding the secondary effects of sexually oriented businesses. Consequently, the court finds that Plaintiffs' evidence from Dr. Daniel Linz is not sufficient at this stage to cast direct doubt on Defendants' evidence of a substantial government interest, especially in light of the fact that several courts have rejected Dr. Linz's findings under similar circumstances. (*See* Def.'s Opp'n at 10.)

### D. Vagueness

Plaintiffs next argue that the statute's definitions of "adult bookstore" and "adult cabaret" are unconstitutionally vague. Defendant Callahan responds first that, as "Plaintiffs identify themselves [as] adult bookstores and adult cabarets, they lack standing to assert vagueness claims against these definitions [as to third parties]. (Def.'s Opp'n at 21.)

Without addressing the standing argument, the court finds that the statute's definitions are not unconstitutionally vague. For the reasons stated above, the court rejects Plaintiffs challenges to the "significant or substantial portion" language. In addition, the court finds that the statute's definition of "regularly" as "consistently or repeatedly," O.R.C. § 2907.40(A)(10), is commonly understood language and is not unconstitutionally vague. Furthermore, as Defendant Callahan notes, the statute contains *scienter* language (*e.g.*, "shall knowingly touch"), which "may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." *Vill. of Hoffman Estates v. Flipside*, 455 U.S 489, 499 (1982); *United States v. Caseer*, 399 F.3d 828, 839 (6th Cir. 2005).

### E. Scope of "Sexually Oriented Business" Definition

Plaintiffs seek a declaration that adult bookstores and adult video stores that merely show, sell, or rent materials that depict sex do not constitute sexually oriented businesses under the statute. The court finds that such a declaration is unnecessary, as the definition of "sexually oriented business" makes this exception clear.

### F. Court's Determination

In balancing the four factors required to issue a TRO, the court finds that the Motion (ECF No. 3) should be denied in light of the fact that Plaintiffs have not shown a likelihood of success on the merits. This determination is obviously based on the limited record before the court. The parties shall have an opportunity at the hearing for Plaintiffs' Motion for Preliminary Injunction to develop a more complete record on which the court may revisit the determinations made herein.

### IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for a TRO is denied. (ECF No. 3.) The parties may begin discovery regarding any matters related to the Motion for Preliminary Injunction (ECF

No. 3) immediately.  The court hereby sets a Preliminary Injunction hearing for November 16, 2007, at 9:00 a.m.

    IT IS SO ORDERED.

                                      /s/*SOLOMON OLIVER, JR.*
                                      UNITED STATES DISTRICT JUDGE

October 18, 2007